[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-13554
_____

D.C. Docket No. 8:13-cv-00068-JSM-AEP


SUNIL KUMAR KURAPATI,
BHARATHI MALLIDI,

Plaintiffs - Appellants,

versus

U.S. BUREAU OF CITIZENSHIP AND
IMMIGRATION SERVICES,
SECRETARY, U.S. DEPARTMENT OF
HOMELAND SECURITY,
U.S. ATTORNEY GENERAL,
ALEJANDRO MAYORKAS,
Director, United States Citizenship and
Immigration Services,
PERRY RHEW,
Chief, United States Citizenship and Immigration
Services Administrative Appeals Office,
MARK HAZUDA,
Service Center Director, United States Citizenship
and Immigration Services Nebraska Service Center,
ROBERT S. MUELLER, III,
Director, Federal Bureau of Investigation,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(December 22, 2014)

ON PETITION FOR REHEARING

Before WILSON, WILLIAM PRYOR and ROSENBAUM, Circuit Judges.

PER CURIAM:

U.S. Citizenship and Immigration Services (USCIS) moved for panel rehearing in this case, with an opinion originally filed on September 22, 2014, and published at 767 F.3d 1185.  In its petition, USCIS challenges our interpretation of a provision of the Immigration and Nationality Act (INA) in considering the district court's subject matter jurisdiction.  We agree with the government's interpretation of that provision, but we remain convinced that the district court had subject matter jurisdiction over the allegations in the complaint.  Accordingly, we grant the motion for rehearing, vacate our prior opinion, and substitute it with the following opinion, which is substantially the same except as to Section III.

Sunil Kurapati and his wife Bharathi Mallidi, natives and citizens of India, appeal from the district court's dismissal for lack of subject matter jurisdiction of their complaint challenging USCIS's revocation of I-140 visa petitions filed on Kurapati's behalf.  On appeal, Kurapati and Mallidi challenge the district court's

2

conclusion that, because Kurapati was a beneficiary, instead of the petitioner, of an I-140 visa petition, he and Mallidi lacked standing to bring their claims. They also argue that the district court erred as a matter of law in concluding that the discretionary decision bar of 8 U.S.C. § 1252(a)(2)(B)(ii) divested the court of jurisdiction because they were raising a question of law, specifically whether USCIS adhered to its pre-revocation notice regulations.

## I.

In order to address the issues raised in this appeal, a brief overview of the immigration procedure applicable to Appellants is necessary. Under the INA, for a company to permanently employ an immigrant worker, it must follow three steps. First, the company must file an immigrant labor certification application with the Department of Labor. INA §§ 203(b)(3)(C), 212(a)(5); 8 U.S.C. §§ 1153(b)(3)(C), 1182(a)(5). Second, after the application is approved, the employer must file an I-140 visa petition on the immigrant's behalf with USCIS. INA § 204(a)(1)(F); 8 U.S.C. § 1154(a)(1)(F); 8 C.F.R. § 204.5(a). Third, if the I-140 visa petition is approved, the immigrant and his spouse can file an I-485 application for adjustment of status. INA §§ 203(d), 245(a); 8 U.S.C. §§ 1153(d), 1255(a); 8 C.F.R. § 245.2(a)(2). Approval of an I-140 visa petition remains valid for beneficiaries with pending adjustment of status applications who change jobs or employers if the adjustment of status application has remained unadjudicated for

3

180 days or more and the new job is in the same or a similar occupational classification as the job for which the petition was filed. INA § 204(j); 8 U.S.C. § 1154(j).[1] This "portability" provision was added to the INA in 2000 pursuant to § 106(c) of the American Competitiveness in the Twenty-First Century Act of 2000, Pub. L. No. 106-313, 114 Stat. 1251 (2000).

Worldwide Web Services, Inc. (Worldwide), completed the first two steps on Kurapati's behalf.[2] As the beneficiary of valid I-140 visa petitions, Kurapati was eligible to proceed to step three. He and Mallidi submitted applications for adjustment of status on August 14, 2007. On April 27, 2009, Kurapati notified USCIS of his intent to port to a new employer under § 1154(j). On July 5, 2012, while the applications for adjustment of status were pending, USCIS issued notices of intent to revoke (NOIR) the I-140 visa petitions to Worldwide. USCIS based the decision on Worldwide's alleged misstatement of a material fact in its applications. Because Worldwide had ceased to exist, only Kurapati filed a response to the NOIRs, on August 4. USCIS revoked the I-140 visa petitions on September 12, stating that Worldwide had the right to appeal the revocations. After Worldwide failed to appeal the revocation, USCIS denied Kurapati's and

---

[1] Section 1154(j) refers to § 1154(a)(1)(D). That is a misprint; the correct subsection is § 1154(a)(1)(F). *Herrera v. U.S. Citizenship & Immigration Servs.*, 571 F.3d 881, 886 n.5 (9th Cir. 2009).

[2] Worldwide actually filed two separate I-140 visa petitions for Kurapati under two separate provisions in § 1153(b). This fact is not relevant to our disposition, and we therefore will not detail the circumstances of each.

4

Mallidi's applications for adjustment of status on October 20. USCIS's stated basis for the decision as to Kurapati was the lack of a valid I-140 visa petition, *see* 8 C.F.R. § 245.2(a)(2)(i), and its basis for the revocation of Mallidi's application for adjustment of status was her dependency on Kurapati's status, *see* 8 U.S.C. § 1153(d).

Kurapati filed appeals with the Administrative Appeals Office (AAO) on September 27, 2012. Worldwide was not involved. During the pendency of those appeals, on January 8, 2013, he and Mallidi filed a complaint in the U.S. District Court for the Middle District of Florida. AAO rejected the appeals, citing Kurapati's lack of standing under their regulations. *See* 8 C.F.R. § 103.3(a)(1)(iii)(B) ("[A]ffected party . . . means the person or entity with legal standing in a proceeding. It does not include the beneficiary of a visa petition."). AAO issued the decision to Worldwide only. USCIS moved to dismiss Kurapati's complaint under Federal Rule of Civil Procedure 12(b)(1) and (6), alleging that Kurapati lacked Article III standing and prudential standing and that the district court did not have subject matter jurisdiction because the decision to revoke the I-140 visa petitions was committed to USCIS's discretion. *See* 8 U.S.C. § 1252(a)(2)(B)(ii) ("[N]o court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of

5

the Attorney General or the Secretary of Homeland Security . . . .").  The district court granted the motion on June 10, 2013.  This appeal followed.

## II.

When reviewing a district court's dismissal of a complaint for lack of subject matter jurisdiction, we review de novo the district court's legal conclusions, including the court's conclusion concerning standing.  *Elend v. Basham*, 471 F.3d 1199, 1204 (11th Cir. 2006).  We have yet to consider in a published opinion whether the beneficiary of an I-140 visa petition has standing to challenge the revocation of a previously approved I-140 visa petition.

"The Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved" under 8 U.S.C. § 1154.  INA § 205; 8 U.S.C. § 1155.  USCIS must provide notice of the intent to revoke to the petitioner.  8 C.F.R. § 205.2(b).  "The petitioner . . . must be given the opportunity to offer evidence in support of the petition . . . and in opposition to the grounds alleged for revocation . . . ."  *Id.*  Upon revocation, USCIS is required to provide the petitioner with written notice of the revocation, and the petitioner has 15 days to appeal the revocation decision.  *Id.* § 205.2(c) and (d).  Regulations pertaining to appeals from a denial of a petition explicitly exclude the beneficiary of a visa petition from the definition of those who have standing to bring an appeal.  *Id.* § 103.3(a)(1)(iii)(B).

6

## A.

To establish constitutional standing, the plaintiff must (1) have an injury-in-fact; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) can likely be redressed with a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136 (1992). In *Patel v. U.S. Citizenship and Immigration Services*, the Sixth Circuit determined that the immigrant beneficiary of an I-140 visa petition had constitutional standing because he suffered an injury that was fairly traceable to USCIS—the loss of an opportunity to become a permanent resident. 732 F.3d 633, 638 (6th Cir. 2013). A favorable decision would redress this injury by restoring that opportunity, even though USCIS might not ultimately approve the immigrant's adjustment of status application. *Id.*

Here, the district court concluded that 8 C.F.R. § 103.3(a)(1)(iii)(B) precluded constitutional standing because it specifically excludes immigrant beneficiaries such as Kurapati in its definition of parties with standing to challenge I-140 visa petition revocations. Without analyzing the circumstances under the tripartite test for constitutional standing, the district court held that Kurapati did not have standing in the district court because he did not have standing to challenge the revocation administratively. However, Kurapati argued that USCIS did not properly follow its own regulations and that he was entitled to notice and an

7

opportunity to be heard by USCIS.  In other words, he did not seek to have the district court decide the merits of the appeal of his I-140 visa petition revocation; he merely sought the opportunity to be heard in an administrative appeal of that revocation.

The district court erred in dismissing Kurapati and Mallidi's complaint for lack of constitutional standing.  First, the regulatory definition of "affected party" does not preclude the beneficiary from having standing in the district court, as it relates to who has the ability to challenge the administrative denial of a petition.  It is therefore not a binding statement of constitutional standing.  Under the test for constitutional standing, Kurapati and Mallidi suffered an injury-in-fact from USCIS's revocation of the I-140 visa petitions—namely, the deprivation of an opportunity to apply for adjustment of status—which is fairly traceable to USCIS and would be redressable by a favorable decision.  *See Lujan*, 504 U.S. at 560–61, 112 S. Ct. at 2136.  USCIS's revocation of the I-140 visa petitions resulted in the automatic denial of Kurapati's and Mallidi's adjustment of status applications.  *See* INA § 245(a); 8 U.S.C. § 1255(a) (providing that to be eligible for adjustment of status an immigrant must have an immigrant visa immediately available).  If the district court were to conclude that the I-140 visa petition was unlawfully revoked because USCIS failed to comply with the regulations, Kurapati and Mallidi would

have the opportunity to challenge the denial of their petitions, and, thus, a favorable decision would redress the injury. *See Patel*, 732 F.3d at 638.

**B.**

The parties also dispute whether the plaintiffs have "prudential standing," but the Supreme Court has recently clarified that "prudential standing" is a "misnomer." *Lexmark International, Inc. v. Static Control Components, Inc.*, ___ U.S. ___, 134 S. Ct. 1377, 1387 n.4 (2014). The term prudential standing implies that whether a particular plaintiff falls within the "zone of interests" protected by a statute or regulation is jurisdictional, but whether a plaintiff's claim is within the zone of interests protected by a statute or regulation is not jurisdictional. *Id* at 1387 & 1387 n.3. Instead of asking whether the plaintiffs have "prudential standing," we ask whether the plaintiffs "fall[] within the class of plaintiffs whom Congress has authorized to sue." *Id*.

Under the Administrative Procedure Act, a party may sue if "the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute in question." *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1268 (11th Cir. 2011) (internal quotation marks omitted). "In applying the zone of interests test, . . . we first discern the interests arguably to be protected by the statutory provision at issue; we then inquire whether the plaintiff's interests affected by the agency action in

9

question are among them." *Id.* at 1269 (internal quotation marks omitted). The zone of interests test "is not meant to be especially demanding." *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399, 107 S. Ct. 750, 757 (1987).

The Sixth Circuit also held that the beneficiary of an I-140 visa petition is within the zone of interests protected by the I-140 visa petition process. *Patel*, 732 F.3d 633, 636–38 (6th Cir. 2013). The beneficiary's interest in obtaining an employment-based visa was within 8 U.S.C. § 1153(b)(3)'s zone of interests. *Id.* at 637. Section 1153(b)(3) makes the visa available directly to the immigrant, not his employer, which suggests that Congress gave the beneficiary a stake in whether he was granted the visa. *Id.* at 636. This conclusion was corroborated by the fact that § 1255(b) provides that the beneficiary of an approved I-140 visa petition becomes eligible for a permanent visa, not a temporary visa that only lasts as long as the employer needs the immigrant's services. *Id.* Additionally, § 1154(j) corroborated this conclusion because it reflects a congressional intent to protect the interests of qualified immigrants by allowing them to change jobs without starting the whole process over again. *Id.* The Sixth Circuit noted that the D.C., Fourth, and Seventh Circuits had each concluded that an immigrant fell within the zone of interests protected by the applicable provisions of the INA under which his employer's I-140 visa petition had been denied. Because the immigrant beneficiary was ultimately the one entitled to the employment-based visa, the Sixth

10

Circuit concluded that the immigrant's interest in receiving the visa was within the zone of interests protected by the statute. *Id.*

We agree that a beneficiary of an I-140 visa petition who has applied for adjustment of status and has attempted to port under § 1154(j) "falls within the class of plaintiffs" Congress has authorized to challenge the denial of that I-140 visa petition. *See Lexmark*, 134 S. Ct. at 1387. It is clear from the statutory framework that such immigrant beneficiaries fall within the zone of interests it regulates or protects. Once the I-140 visa petition is approved, it is the immigrant who receives the visa and who applies for adjustment of status. INA §§ 203(b)(3), 245(a); 8 U.S.C. §§ 1153(b)(3), 1255(a). Additionally, § 1154(j) supports the conclusion that the immigrant's interests are within the statute's zone of interests, as the petitioning employer derives no benefit from the employee's ability to port the I-140 visa petition to another employer. *Patel*, 732 F.3d at 636. Even assuming that Congress intended to benefit American employers and protect jobs for American citizens in creating the framework for employment visas, that does not rule out that Congress acted with the intent to regulate or protect immigrants' interests. *See id.* at 637. We presume that Congress intended for agency action to be reviewable. *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, __ U.S. __, __, 132 S. Ct. 2199, 2210 (2012). USCIS cannot overcome this presumption merely by pointing to interests besides immigrants' advanced by

11

the statutory framework, especially where they do not necessarily conflict. Therefore, Kurapati falls within the zone of interests and may challenge the I-140 visa petition revocation.

## III.

A district court lacks subject matter jurisdiction to review any "decision or action of . . . the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of . . . the Secretary of Homeland Security."  INA § 242(a)(2)(B)(ii); 8 U.S.C. § 1252(a)(2)(B)(ii). Section 1252(a)(2)(B)(ii) does not deprive the district court of jurisdiction here.  If, as Kurapati claims in his complaint, USCIS failed to follow the correct procedure in revoking the I-140 petitions, that failure was not within USCIS's discretion. Section 1252(a)(2)(B)(ii) thus does not prevent judicial review of the conduct of the administrative proceedings.

Kurapati cites our unpublished opinion, *Bonillo v. Secretary, U.S. Department of Homeland Security*, to support his position that the district court has jurisdiction to consider whether USCIS followed protocol.  497 F. App'x 913, 915–16 (11th Cir. 2012) (per curiam).  There, we drew a distinction between judicial review of the I-140 revocation and judicial review of whether the agency complied with the applicable administrative procedure in revoking the I-140, and we determined that § 1252(a)(2)(B)(ii) did not divest the district court of

12

jurisdiction to consider the latter. *Id.* USCIS attempts to distinguish *Bonillo* from the present case by asserting that, here, USCIS followed the regulations, while in *Bonillo*, USCIS failed to do so. This contention, though, reaches the merits—actually, the very heart—of Kurapati's claim; it does not decide the jurisdictional question.

We agree with the analysis set forth in *Bonillo* and apply it here. "Even when a decision is committed to agency discretion, a court may consider allegations that an agency failed to follow its own binding regulations." *Fla. Dep't of Bus. Regulation v. U.S. Dep't of Interior*, 768 F.2d 1248, 1257 n.11 (11th Cir. 1985), *abrogated on other grounds by Patchak*, 132 S. Ct. 2199; *see Morton v. Ruiz*, 415 U.S. 199, 235, 94 S. Ct. 1055, 1074 (1974) ("Before the BIA may extinguish the entitlement of these otherwise eligible beneficiaries, it must comply, at a minimum, with its own internal procedures."); *Gonzalez v. Reno*, 212 F.3d 1338, 1349 (11th Cir. 2000) ("Agencies must respect their own procedural rules and regulations."). Therefore, we conclude that the district court has subject matter jurisdiction over the claims raised in Kurapati's complaint.

**VACATED AND REMANDED.**