[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-10847

Non-Argument Calendar

_____

PEDRO ELIEZER GARCIA-PUAC,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A205-454-486

_____

Before NEWSOM, GRANT, and BRASHER, Circuit Judges.

PER CURIAM:

Pedro Garcia-Puac petitions this Court for review of the Board of Immigration Appeals' ("BIA") order adopting the immigration judge's denial of his application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). Garcia-Puac argues that the immigration judge's finding that his testimony was credible contradicts the conclusion that he did not suffer past persecution. He also argues that he met the standard for withholding of removal, and the immigration judge failed to consider relevant factors when assessing his CAT claim. Because he is subject to 8 U.S.C. § 1158(a)(3)'s jurisdiction bar, we lack jurisdiction to review Garcia-Puac's challenge to the BIA's denial of his application for asylum. Furthermore, substantial evidence supports the immigration judge's findings in denying his withholding of removal and CAT claims. Accordingly, we dismiss Garcia-Puac's petition in part and deny in part.

## I.

Garcia-Puac, a native and citizen of Guatemala, entered the United States without permission or inspection in 2012. Shortly thereafter, the Department of Homeland Security initiated removal proceedings and charged Garcia-Puac with inadmissibility as a non-citizen present without permission or parole. *See* 8 U.S.C. § 1182(a)(6)(A)(i). He appeared with counsel in immigration court

and conceded his removability. He subsequently filed an application for asylum, withholding of removal, and CAT relief.

At the merits hearing, Garcia-Puac testified that he is a member of an indigenous Quiche group in Guatemala. He explained that because of his indigenous ethnicity, he faced discrimination in Guatemala when traveling to more urban areas. On one occasion, police threatened him with a traffic summons if he could not provide them with a bribe. He also cited incidents when others would harass and occasionally "grab" him if he was alone. Garcia-Puac testified that, despite the ridicule he faced on account of his ethnicity, he was never arrested or physically harmed.

Garcia-Puac testified that he feared Guatemalan criminals would assume he garnered wealth in the United States and would harm him or his family if he returns. When the immigration judge asked for the foundation of that belief, Garcia-Puac responded that there are growing problems in his country according to the news and his parents. To support his application, he submitted the U.S. Department of State's Guatemalan Human Rights Reports that described the political underrepresentation of the country's indigenous communities. The reports also explained the pervasive discrimination against indigenous communities who suffer from disproportionate poverty.

In an oral decision, the immigration judge concluded that Garcia-Puac was removable and ineligible for relief for three reasons. First, the judge found his asylum application was untimely because he was not exempt from the statutory one-year filing

deadline. Even if the application was timely, the immigration judge also decided against the merits of the claim. Although Garcia-Puac's testimony was credible and the Quiche people were a particular social and racial group, Garcia-Puac did not establish past persecution or a well-founded fear of future persecution. Second, the immigration judge found that Garcia-Puac was ineligible for withholding of removal for the same substantive reasons that supported denial of the asylum claim on the merits. Third, the immigration judge denied CAT relief because Garcia-Puac failed to establish that he was likely to be tortured or that the Guatemalan government would consent or acquiesce to his torture. According to these findings, the immigration judge ordered Garcia-Puac be removed to Guatemala.

Garcia-Puac appealed, through counsel, to the BIA. He argued that the immigration judge's findings that his testimony was credible and that the Quiche people were a particular social group compelled the conclusion that Garcia-Puac suffered from past persecution. Therefore, he argued that the immigration judge erred by not granting asylum and withholding of removal because his credible testimony established that he was in danger of persecution in Guatemala. He also argued the immigration judge failed to consider all relevant factors when assessing whether there were substantial reasons to believe he would face torture after his return.

The BIA adopted and affirmed the immigration judge's decision and dismissed the appeal. It stated that the immigration judge did not clearly err and that none of Garcia-Puac's arguments

warranted overturning the decision. Garcia-Puac timely appealed and presents the same arguments he offered to the BIA to this Court.

## II.

"We review our subject matter jurisdiction de novo." *Blanc v. U.S. Att'y Gen.*, 996 F.3d 1274, 1277 (11th Cir. 2021). An application for asylum generally must be filed within one year of arriving in the United States. 8 U.S.C. § 1158(a)(2)(B). The determination of whether an alien can apply for asylum—including whether that application is exempt from the statutory deadline—is left exclusively to the Attorney General. 8 U.S.C. § 1158(a)(3); *Chacon-Botero v. U.S. Att'y Gen.*, 427 F.3d 954, 956–57 (11th Cir. 2005). Accordingly, we are statutorily divested of jurisdiction to review a decision on the timeliness of an asylum application. *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003).

When the BIA expressly adopts the immigration judge's opinion as its own, we review the immigration judge's decision. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009). We must affirm the decision "if it is supported by reasonable, substantial, and probative evidence" when considering the record as a whole. *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc). We must reverse the decision only if, viewing the evidence in the light most favorable to the decision, the record compels reversal, not merely supports a contrary conclusion. *Id.*; *Hasen-Nayem v. U.S. Att'y Gen.*, 55 F.4th 831, 842 (11th Cir. 2022).

### III.

Garcia-Puac challenges the immigration judge's denial of his (1) application for asylum, (2) withholding of removal, and (3) CAT relief. We address each in turn.

Generally, an alien must apply for asylum within one year after his or her arrival in the United States. *See* 8 U.S.C. § 1158(a)(2)(B). The Attorney General may elect to consider an untimely application if the applicant presents changed circumstances materially affecting his or her eligibility or if extraordinary circumstances resulted in a delayed filing. 8 U.S.C. § 1158(a)(2)(D). Regardless of the Attorney General's decision, the statute clearly divests the Court of jurisdiction to review the timeliness of an application. *See* 8 U.S.C. § 1158(a)(3). The immigration judge denied Garcia-Puac's application because he applied more than a year after entering the United States. Garcia-Puac does not challenge the immigration judge's finding on timeliness in his petition for review. Because we lack jurisdiction, and because he does not challenge the factual finding, Garcia-Puac's petition to review the denial of asylum should be dismissed.

To obtain withholding of removal, Garcia-Puac bears the burden of showing that his life or freedom would be threatened on account of his "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *Mendoza*, 327 F.3d at 1287. Even if an immigration judge treats an alien's testimony as credible in the merits hearing, the testimony does not automatically meet the burden of proof the statute

requires. *Garland v. Ming Dai*, 141 S. Ct. 1669, 1680 (2021). When construing what constitutes a "particular social group," for purposes of refugee status, we have held that aliens targeted by criminal groups for having been in the United States do not qualify under the statute. *See Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1307 (11th Cir. 2019).

Garcia-Puac argues that, because the immigration judge determined his testimony was credible, the judge should have concluded he was likely to suffer persecution in Guatemala. But Garcia-Puac is incorrect that a finding of factual credibility requires an adoption of his legal conclusions. *See Ming Dai*, 141 S. Ct. at 1680. Although Garcia Puac's testimony established previous discrimination, the record is clear that he never faced physical harm. Additionally, he did not testify that Guatemalan gangs or members of the government targeted him on account of his ethnicity. And although his Quiche heritage qualifies as a protected group under the statute, being an alien returning from the United States to Guatemala does not. *See Perez-Zenteno*, 913 F.3d at 1307. Substantial evidence supports the immigration judge's finding that Garcia-Puac did not establish a likelihood of persecution in Guatemala. Because the record does not compel reversal, Garcia-Puac's petition for withholding of removal should be denied. *See Hasen-Nayem*, 55 F.4th at 842.

To qualify for CAT relief, an applicant must establish that "it is more likely than not that he or she would be tortured," with the consent or acquiescence of a person acting in an official capacity, if

removed. 8 U.S.C. § 208.16(c)(2); 208.18(a)(1). A government does not acquiesce to torture when it attempts to combat violence or corruption, even if those attempts do not succeed. *See Sanchez-Castro v. U.S. Att'y Gen.*, 998 F.3d 1281, 1288 (11th Cir. 2021). Garcia-Puac did not introduce evidence suggesting he is likely to be tortured or that the Guatemalan government would acquiesce to such torture. Nothing in the record before the Court suggests he is likely to face torture if removed, and he has not directed us to any evidence signifying that the Guatemalan government would acquiesce to his torture. Because the record does not compel reversal, Garcia-Puac's petition for CAT relief should be denied. *See Hasen-Nayem*, 55 F.4th at 842.

## IV.

PETITION DISSMISSED IN PART AND DENIED IN PART.